**BURSOR & FISHER, P.A.**
Daniel S. Guerra (State Bar No. 267559)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: dguerra@bursor.com

*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MEAGHAN AUFRICHTIG, individually and on behalf of all others similarly situated,

Plaintiff,

v.

MELISSA DATA CORPORATION,

Defendant.

Case No. 8:25-CV-02597-JWH-ADS

**FIRST AMENDED CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Meaghan Aufrichtig ("Plaintiff"), individually and on behalf of all others similarly situated, bring this Class Action Complaint for violations of Colo. Rev. Stat. § 6-1-304 (Colorado's "Prevention of Telemarketing Fraud Act" or "PTFA") against Defendant Melissa Data Corporation ("Melisa" or "Defendant"). Plaintiff makes the following allegations pursuant to her counsel's investigation and based upon information and belief, except as to allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1. On May 27, 2005, former Colorado Governor Bill Owens signed into law HB05-1288,[1] which amended the PTFA to prohibit commercially listing a cell phone number in a directory, without permission.[2] *See* Colo. Rev. Stat. § 6-1-304(4)(a)(I).

2. This prohibition is designed to protect privacy. As former State Representative Mark Cloer,[3] a prime sponsor of HB05-1288,[4] stated in describing this new portion of the PTFA: "[m]ost people view their cell phones as private. They give out the number to friends and family and some colleagues. When their cell phone rings, they expect it to be important."[5]

3. Indeed, concern over cell phone privacy is widespread. According to a

---

[1] https://www.leg.state.co.us/clics2005a/csl.nsf/fsbillcont2/1BB0D3E00348AC6987256F90007C20C7?Open. *See also* https://scholar.law.colorado.edu/cgi/viewcontent.cgi?article=3081&context=session-laws-2001-2050.

[2] https://www.leg.state.co.us/CLICS2005A/commsumm.nsf/IndSumm/574E34C489356ADA87256FB100612E60?OpenDocument. *See also* https://www.leg.state.co.us/CLICS2005A/commsumm.nsf/91320994cb8e0b6e8725681d005cb995/574e34c489356ada87256fb100612e60?OpenDocument.

[3] *See* https://www.leg.state.co.us/clics2005a/directory.nsf.

[4] https://scholar.law.colorado.edu/cgi/viewcontent.cgi?article=3289&context=session-laws-2001-2050 at p. 2461. *See also* https://www.leg.state.co.us/CLICS2005A/csl.nsf/StatusAll?OpenFrameSet.

[5] https://www.9news.com/article/news/local/politics/legislative-library-feb-23-2005/73-344789916.

research paper presented in May 2005 at the American Association for Public Opinion Research (AAPOR)'s Annual Conference[6] and January 2006 at the American Statistical Association (ASA)'s Second International Conference on Telephone Survey Methodology:[7]

> [T]here appears to be a strong reluctance on the part of cell phone owners to have their cell phone numbers listed in a directory. …
>
> This reluctance on the part of respondents to have their cell phone number listed in a directory may be rooted in not wishing to incur additional costs due to unsolicited incoming calls. …
>
> A more likely reason for their unwillingness to have their cell phone number listed is that respondents view the cell phone as more of a private medium of communication than their land-line phone. They probably wish to restrict access to their cell phone number to family and friends.[8]

4. The Colorado General Assembly enacted subsection (4) of the PTFA to address these privacy concerns and to protect cell phone users from the misappropriation of their personal information. This aligns with the PTFA's overall purpose, as articulated by Colo. Rev. Stat. § 6-1-301:

> The general assembly hereby finds, determines, and declares that the use of telephones for commercial solicitation is rapidly increasing; that this form of communication offers unique benefits, but entails special risks and poses the potential for abuse; that the general assembly finds that the widespread practice of fraudulent and deceptive commercial telephone solicitation has caused substantial financial losses to thousands of consumers, and, particularly, elderly, homebound, and otherwise vulnerable consumers, and is a matter vitally

---

[6] https://aapor.org/wp-content/uploads/2024/05/AAPORPrograms2005.pdf at pp. 13, 84.

[7] https://scholar.google.com/citations?view_op=view_citation&hl=en&user=I2jkzr0AAAAJ&citation_for_view=I2jkzr0AAAAJ:M3ejUd6NZC8C; https://ww2.amstat.org/meetings/tsmii/2006/index.cfm?fuseaction=main.

[8] http://www.asasrms.org/Proceedings/y2005/files/JSM2005-000345.pdf at p. 4005.

> affecting the public interest; and, therefore, that the general welfare of the public and the protection of the integrity of the telemarketing industry requires statutory regulation of the commercial use of telephones.

5. Colo. Rev. Stat. § 6-1-304(4) provides, in pertinent part:

> (a) On or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly:
>
> > (I) Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing[.]

6. Despite this abundantly clear proscription, Defendant has listed the cellular telephone numbers of thousands of Colorado residents in its for-sale and for-profit directories, without requesting (let alone actually receiving) affirmative consent to such listings.

7. Thus, while Defendant profits handsomely from its unauthorized commercial listing of Plaintiff's and other Class Members' personal information, it does so at the expense of Coloradans' statutory privacy rights, under the PTFA.

8. Not only is Defendant's misappropriation unlawful – it is also dangerous. The Federal Trade Commission's ("FTC") report on "Data Brokers" states:

> There are a number of potential risks to consumers from data brokers' collection and use of consumer data. … [T]hey may facilitate the sending of advertisements … which some consumers may find troubling and which could undermine their trust in the marketplace. Moreover, … people search products can be used to facilitate harassment, or even stalking, and may expose domestic violence victims, law enforcement officers, prosecutors, public officials, or other individuals to retaliation or other harm. [In addition, s]toring [d]ata [a]bout [c]onsumers

[i]ndefinitely [m]ay [c]reate [s]ecurity [r]isks[.][9]

9. Plaintiff brings this action to prevent Defendant from further violating the privacy rights of Colorado cell phone users and to recover statutory damages from Defendant, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

## PARTIES

10. Plaintiff Meaghan Aufrichtig is, and has been at all relevant times, a resident and citizen of Colorado Springs, Colorado. Plaintiff's cellular telephone number was listed by Defendant in its directory, available at melissa.com, to advertise products and services and/or pursuant to Defendant's provision of its paid services. Defendant never requested – and Plaintiff never provided – affirmative consent, through written, oral, or electronic means, to such listing. In fact, Plaintiff has no relationship with Defendant whatsoever, and, to date, has never visited Defendant's website. Plaintiff had never heard of Defendant and had no reasonable ability to discover Defendant's use of her personal information until shortly before filing suit.

11. Defendant Melissa Data Corporation is a California corporation with its principal place of business at 22382 Avenida Empresa, Rancho Santa Margarita, California 92688. Defendant is primarily engaged in the business of selling or leasing goods or services. Specifically, Defendant operates the directory melissa.com. Therein, and for commercial purposes, Defendant has listed the cellular telephone numbers of thousands of individuals whom it knows to reside in Colorado.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to Cal. Code Civ. Proc. § 410.10. This action is brought as a class action on behalf of Plaintiff and

---

[9] https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf at p. 48.

Class members pursuant to Cal. Code Civ. Proc. § 382.

13. This Court has personal jurisdiction over Defendant because Defendant is headquartered in and has its principal place of business is in California.

14. Venue is proper in this Court pursuant to Cal. Code Civ. Proc. §§ 395 and 395.5 because Defendant resides in this County.

## FACTUAL ALLEGATIONS

### I. Overview of Defendant's Directory

15. Defendant is a data broker – a company "that collect[s] consumers' personal information and resell[s] or share[s] that information with others[.]"[10]

16. Specifically, Defendant provides online "people search" (also known as "people finder") services. People search companies, like Defendant, specialize in compiling vast amounts of information about individuals from various sources.[11] Defendant's website further explains who its customers are and how they use its data:

- "For 40 years, Melissa has pioneered solutions that turn [] data into actionable insights. … [W]e help empower … businesses worldwide to eliminate costly errors, boost efficiency, and drive growth. … [M]ore than 10,000 clients worldwide have chosen Melissa to grow their business."[12]
- "Melissa is trusted by 10,000 clients worldwide to provide smart, sharp solutions[.] … Because corrupt, inaccurate … data won't help you improve the customer experience, make better decisions and grow your business."[13]
- "Melissa's industry leading products and services empower improved business communications, … always critical to industries around the world and particularly as marketers face pandemic disruption and quickly evolving customer needs. … More than 10,000 clients worldwide in arenas such as retail, education, healthcare, insurance, finance, and government, rely on

---

[10] https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf at p. i.

[11] https://consumer.ftc.gov/articles/what-know-about-people-search-sites-sell-your-information.

[12] https://www.melissa.com/company/about.

[13] https://www.melissa.com/hubfs/data-sheet-why-melissa-solutions.pdf.

Melissa for full spectrum data quality … to gain critical insight[.]"[14]

17. Defendant and its competitors monetize people's personal details through their directories – some of which are ad-supported and give users free access to the data, and others of which furnish reports about people for a fee.

18. Defendant's directory is available at melissa.com. There, melissa.com users can view Coloradans' cell phone numbers, addresses, and more.

19. This is achieved by simply searching an individual by name, city, state, address, and/or other parameters:




[14] https://blog.melissa.com/en-us/global-intelligence/melissa-marks-30-billion-address-lookups.

20. After entering this information, melissa.com users are furnished a list of search results. Each result corresponds to an actual person that Defendant has located who matches the searched parameters.[15]



15 possible matches found

US01 ?

Text Filter ...

| Name | Address | City | State | ZIP | Age | MIK ? |
|---|---|---|---|---|---|---|
| Matthew Girardi | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | 103[redacted] |
| Matthew Girardi | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | 101[redacted] |
| Matthew Girardi | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | 104[redacted] |
| Matthew Girardi | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | 103[redacted] |
| Matthew Girardi | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | 103[redacted] |
| Matthew [redacted] Girardi | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | 113[redacted] |
| Matthew [redacted] Girardi | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | 111[redacted] |
| Matthew Girardi | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | 103[redacted] |
| Matthew [redacted] Girardi | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | 104[redacted] |
| Matthew Girardi | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | 104[redacted] |
| Matthew Girardi | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | 106[redacted] |
| Matthew Girardi | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | 103[redacted] |
| [illegible] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |

Easily obtain data with JSON, XML or Excel formats (1 credit for each request)

JSON XML EXCEL

[15] Note, in these and the subsequent images, Plaintiff's counsel has redacted certain sensitive personal information (black portions).

21. Upon selecting a particular person to investigate from the melissa.com search results, a melissa.com user can access a more complete profile of the person, including their full unredacted phone number, address, age, and a plethora of other identifying information.

<table>
<tr><th colspan="2">Name & Address Verified ✓<br>DA00,DA30 ?<br>Suggest an Edit</th></tr>
<tr><td colspan="2">Climate · Contributors · Home Sales · Nonprofits · Street Detail · Crime Map</td></tr>
<tr><td>Name at Address</td><td>Matthew A Girardi ✓ Name & Address Match (VR01)</td></tr>
<tr><td>MIK (Melissa Identity Key) ?</td><td>113[redacted]</td></tr>
<tr><td>Birth Month-Year</td><td>[redacted]-19[redacted] Age: [redacted]</td></tr>
<tr><td>Address</td><td>[redacted] ✓ Address Appended (DA00)</td></tr>
<tr><td>Neighborhood</td><td>[redacted] Map</td></tr>
<tr><td>Phone</td><td>20[redacted]-[redacted]-[redacted] ✓ Phone Appended (DA30)</td></tr>
<tr><td>MAK (Melissa Address Key) ?</td><td>356[redacted] (BaseMAK=505[redacted]) Personator Search by MAK</td></tr>
<tr><td>Suite/Apt. Count</td><td>[redacted]</td></tr>
<tr><td>Lat. & Long.</td><td>40.[redacted] -73.[redacted] ✓ Geocoded to Rooftop Level (GS05)</td></tr>
<tr><td>Delivery Type</td><td>Residential</td></tr>
<tr><td>Postal Carrier Route</td><td>C233 (DPC: 43-3 ) Map</td></tr>
<tr><td>Census Entities</td><td>County 36061 New York Map<br>County Subdivision 44919 Manhattan borough Map<br>Tract 0128.00 Map<br>Block 1003 Map Block Parcels<br>City, Place or Town 3651000 New York Map<br>Unified School District 20580 New York City Department Of Education Map</td></tr>
<tr><td>Elected Officials</td><td>National | State | Local Powered by CICERO</td></tr>
<tr><td>U.S. Representative</td><td>Jerrold Nadler (D) (12) Map</td></tr>
</table>

22. As the above image of melissa.com makes clear, Defendant knowingly lists Coloradans' cell phone numbers. Indeed, upon clicking the listed phone number, the user is taken to a separate "Global Phone" lookup which displays additional information about the phone number, including the carrier, line type (*i.e.*, "Mobile"), registered location, and time zone. Defendant further explains that its "Fone*Data" is "ideal for telemarketing[.]"[16] Defendant also provides "Premium Phone Verification" to determine whether a phone number is "callable and [to] identif[y] its type – landline, mobile; offers carrier details;" to "determine[] country of origin[;]" and to "determine[] whether a mobile number is live and connected."[17]

| Global Phone Information | |
|---|---|
| Caller ID | MATTHEW GIRARDI Business Search |
| International Dialing | +1-20[redacted]-[redacted] |
| Local Dialing | 1-20[redacted]-[redacted] |
| Carrier | Verizon Wireless |
| Line Type | Mobile PS07 |
| Result Codes | PS01,PS07,PS18,PS22 ? |
| City* | [redacted] |
| County | [redacted] |
| State* | [redacted] |
| Postal Code | [redacted] |
| Country | United States |
| Language | English |
| Time Zone | -05:00 UTC, Eastern Time |
| Daylight Saving Time | Y |
| Latitude & Longitude* | 41.[redacted], -72.[redacted] |

[16] https://www.melissa.com/fonedata-reference-data-sets.

[17] https://www.melissa.com/hubfs/resources/catalog-melissa-solutions.pdf at p. 11.

23. Defendant lists Plaintiff's and Class Members' cell phone numbers for a commercial purpose: (a) to entice individuals to pay to acquire access to melissa.com credits; and (b) to fulfill Defendant's obligations to individuals who have paid for melissa.com credits. Indeed, that is Defendant's entire business model. Defendant is literally selling Plaintiff's and Class Members' cell phone numbers and accompanying information to its customers. To complete a person search on melissa.com and thereby access a person of interest's cell phone number, a melissa.com user must spend approximately one to four credits.[18] Defendant offers various credit packages, including 1,000 credits for $4.97 (labeled a "[v]erification [f]ee"); 10,000 credits for $40; 100,000 credits for $350; and 1,000,000 credits for $3,200.[19]

## II. <u>Defendant's Conduct Harms Coloradans</u>

24. Consumer data is key to the $26 billion-per-year online advertising industry in the United States.[20] Clearly, and per the FTC, consumer data possesses inherent monetary value:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis – and profit.[21]

25. In fact, individuals' private information has become such a valuable commodity that companies now offer individuals the opportunity to monetize their

---

[18] *See, e.g.*, https://lookups.melissa.com/home/personatorsearch; https://lookups.melissa.com/home/personator/.

[19] https://www.melissa.com/pricing#purchase-credits.

[20] http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html.

[21] https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf at p. 2.

personal data.[22]

26. These companies' business models capitalize on a fundamental principle underlying the modern information marketplace: Consumers recognize the economic value of their private data. Along these lines, research shows that consumers are willing to pay a premium to purchase services from companies that adhere to more stringent policies of protecting their data.[23] A 2014 survey conducted by Harris Interactive on behalf of TRUSTe, Inc. showed that 89 percent of consumers avoid doing business with companies who they believe do not protect their privacy.[24] The same is true for 80 percent of smartphone users, who say that they avoid using smartphone apps that they don't believe protect their privacy.[25]

27. Defendant's misappropriation of Coloradans' cell phone numbers undeniably deprives state residents of the ability to enjoy their PTFA privacy rights. It also deprives them of the real, quantifiable value of such data.

28. Further, "[p]eople search sites … offer a wealth of information that can be exploited by malicious actors."[26] For one, "[b]undling [personal data] all together and making it so easily accessible can … put ordinary people at risk of … stalking and

---

[22] *See, e.g.*, https://www.washingtonpost.com/technology/2023/02/06/consumers-paid-money-data/; http://www.nytimes.com/2012/02/13/technology/start-ups-aim-to-help-users-put-a-price-on-their-personal-data.html; https://techcrunch.com/2023/08/16/caden-lands-15m-to-let-users-monetize-their-personal-data/; https://www.theverge.com/2019/6/11/18661595/facebook-study-app-monitor-phone-usage-pay; https://sifted.eu/articles/gener8; https://www.theverge.com/2012/2/8/2785751/google-screenwise-panel-web-monitoring-knowledge-networks; https://www.sidehustlenation.com/get-paid-for-your-data/; https://millennialmoneyman.com/get-paid-for-your-data/.

[23] *See, e.g.*, https://web.archive.org/web/20250622135647/https://www.enisa.europa.eu/sites/default/files/publications/monetising_privacy.pdf; https://papers.ssrn.com/sol3/Delivery.cfm?abstractid=3305347.

[24] *See* https://web.archive.org/web/20190820142832/http://www.theagitator.net/wp-content/uploads/012714_ConsumerConfidenceReport_US1.pdf at p. 3.

[25] *Id.*

[26] https://www.foxnews.com/tech/dangerous-intersection-people-search-sites-scams.

other forms of harassment."[27] Second, people search sites' "comprehensive data allows cybercriminals to build detailed profiles of potential victims, making it easier to craft convincing scams or carry out identity theft."[28] This "put[s] almost anyone within the reach of fraudulent telemarketers[]" and other wrongdoers.[29]

29. Information disclosures like Defendant's are particularly dangerous to the elderly. "Older Americans are perfect telemarketing customers, analysts say, because they are often at home, rely on delivery services, and are lonely for the companionship that telephone callers provide."[30] The FTC notes that "[t]he elderly often are the deliberate targets of fraudulent telemarketers who take advantage of the fact that many older people have cash reserves or other assets to spend on seemingly attractive offers."[31]

30. Making matters worse, "[o]nce marked as receptive to [a specific] type of scam, a consumer often is bombarded with similar fraudulent offers from a host of scam artists."[32]

31. Cell phone numbers are also a key piece of information for SIM swappers - hackers who take over a target's phone number in order to receive their calls and texts, which in turn can let them break into all manner of accounts. These sorts of hackers have been linked to countless hacks of individual people in order to, among other things, steal online usernames or cryptocurrency. Some have worked directly with ransomware gangs from Eastern Europe. Armed with a cell phone number, a SIM swapper may then impersonate the victim and convince their telecom

---

[27] https://innovation.consumerreports.org/Data-Defense_-Evaluating-People-Search-Site-Removal-Services-.pdf.

[28] https://www.foxnews.com/tech/dangerous-intersection-people-search-sites-scams.

[29] http://www.nytimes.com/2007/05/20/business/20tele.html.

[30] *Id.*

[31] https://www.ftc.gov/sites/default/files/documents/public_statements/prepared-statement-federal-trade-commission-fraud-against-seniors/agingtestimony.pdf at p. 1.

[32] *Id.* at p. 3.

provider to reroute text messages to a SIM card the hacker controls. From there, the hacker can request password reset text messages, or multifactor authentication codes, and log in to the victim's valuable accounts. This could include accounts at financial institutions, accounts that store cryptocurrency or, even more damaging, their email accounts, which in turn could grant access to many other accounts. For this reason, the FBI recommends on its website that people do not publicly advertise their phone number. "Protect your personal and financial information. Don't advertise your phone number, address, or financial assets, including ownership or investment of cryptocurrency, on social media sites," the site reads.[33]

## CLASS ALLEGATIONS

32. Plaintiff seeks to represent a class defined as all Colorado residents whose cell phone numbers were listed on melissa.com without their affirmative consent during the applicable statute of limitations period (the "Class").

33. Plaintiff reserves the right to modify the Class definition, including by using subclasses, as appropriate based on further investigation and discovery obtained in the case.

34. **Numerosity:** The Class is composed of at least thousands of individuals, the joinder of which in one action would be impracticable. The disposition of their claims through this class action will benefit both the parties and the Court.

35. **Existence and Predominance of Common Questions of Fact and Law:** There is a well-defined community of interest in the questions of law and fact involved affecting the members of the proposed Class. The questions of law and fact common to the proposed Class predominate over questions affecting only individual Class Members. Such questions include, but are not limited to, the following:

---

[33] https://www.wired.com/story/a-researcher-figured-out-how-to-reveal-any-phone-number-linked-to-a-google-account/; https://www.fbi.gov/contact-us/field-offices/phoenix/news/press-releases/fbi-tech-tuesday-sim-swapping.

whether Defendant violated Colo. Rev. Stat. § 6-1-304(4)(a)(I); and whether Plaintiff and Class Members are entitled to damages, reasonable attorneys' fees, pre-judgment interest and costs of this suit, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

36. **Typicality:** The claims of the named Plaintiff are typical of the claims of the Class because Plaintiff, like all other Class Members, had her cell phone number listed by Defendant for a commercial purpose; Defendant did so without requesting or receiving Plaintiff's affirmative consent (through written, oral, or electronic means); and Defendant's misappropriation of Plaintiff's personal data (including the economic value thereof) came at the expense of Plaintiff's PTFA privacy rights.

37. **Adequacy:** Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

38. **Superiority:** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues. Finally, Defendant has acted or refused to act on grounds generally

applicable to the entire Class, thereby making it appropriate for this Court to grant final injunctive relief and declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

## COUNT ONE

### Violation of the Prevention of Telemarketing Fraud Act, Colo. Rev. Stat. § 6-1-304(4)(a)(I)

39. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

40. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

41. Colo. Rev. Stat. § 6-1-304(4) provides, in pertinent part:

> (a) On or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly:
>
> > (I) Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing[.]

42. Defendant failed to comply with this PTFA mandate.

43. Defendant knowingly lists Coloradans' cell phone numbers. Defendant displays information about phone numbers, including the carrier, line type (*i.e.*, "Mobile"), registered location, and time zone. Defendant further explains that its "Fone*Data" is "ideal for telemarketing[.]"[34] Defendant also provides "Premium Phone Verification" to determine whether a phone number is "callable and [to] identif[y] its type – landline, mobile; offers carrier details; and then determines country of origin" and finally "whether a mobile number is live and connected."[35]

44. To "list" in this context means "to have or show (someone or something)

---

[34] https://www.melissa.com/fonedata-reference-data-sets.

[35] *Id.*at 11.

as part of a list, register, or record." *See List,* Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/list.

45. Defendant's website, melissa.com, is a directory – i.e., an "electronic resource containing lists of information, usually in alphabetical order, for example people's phone numbers or the names and addresses of businesses in a particular area[.]" *Directory*, Oxford Learner's Dictionary, https://oxfordlearnersdictionaries.com/us/definition/english/directory.[36]

46. Defendant lists Plaintiff's and Class Members' cell phone numbers for a commercial purpose: (a) to entice individuals to pay to acquire access to melissa.com credits; and (b) to fulfill Defendant's obligations to individuals who have paid for melissa.com credits. Defendant is literally selling Plaintiff's and Class Members' cell phone numbers and accompanying information to its customers.

47. Defendant never requests nor receives Coloradans' "affirmative consent, through written, oral, or electronic means, to such listing[.]" Colo. Rev. Stat. § 6-1-304(4)(a)(I). In fact, Defendant never requests nor receives any consent whatsoever, affirmative or otherwise, to list cell phone numbers. Rather, Defendant lists the cell phone numbers of Coloradans it has never engaged with, has had no connection to, and who are unaware of its existence.

48. Defendant's misappropriation of Class Members' personal data (including the economic value thereof) came at the expense of Class Members' PTFA privacy rights. It deprived Class Members of the real, quantifiable value of such data. And it exposed Class Members to elevated risks of stalking, harassment,

---

[36] *See also Directory*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/directory ("an alphabetical or classified list (as of names and addresses)[.]"); *Directory*, Cambridge Essential American English Dictionary, https://dictionary.cambridge.org/us/dictionary/essential-american-english/directory ("a book or list of names and numbers"); *Directory*, AllWords.com Multi-Lingual Dictionary, https://www.allwords.com/word-directory.html ("A list of names, address etc., of specific classes of people or organizations, often in alphabetical order or in some classification.").

scams, identity theft, and unwanted telemarketing.

49. Thus, on behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class; (3) damages, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars and not more than five hundred dollars for each first offense, and at least five hundred dollars and not more than one thousand dollars for each second or subsequent offense; and (4) reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, respectfully request that this Court enter an Order:

(a) Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as the representative of the Class, and appointing Plaintiff's counsel as Class Counsel;

(b) Declaring that Defendant's actions, as set out above, violate Colo. Rev. Stat. § 6-1-304(4)(a)(I) (Colorado's "Prevention of Telemarketing Fraud Act" or "PTFA");

(c) Awarding damages, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars and not more than five hundred dollars for each first offense, and at least five hundred dollars and not more than one thousand dollars for each second or subsequent offense;

(d) Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia*, an Order requiring Defendant to comply with the PTFA;

(e) Awarding Plaintiff and the Class their reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(1)(c);

(f) Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

(g) Awarding such other and further relief as equity and justice may require.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury for all issues so triable.

Dated: January 13, 2026

**BURSOR & FISHER, P.A.**

By:________________________

Daniel S. Guerra (State Bar No. 267559)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: dguerra@bursor.com

*Attorney for Plaintiff*